REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1878

September Term, 2011

DONALD R. TWIGG

v.

STATE OF MARYLAND

Woodward,
Nazarian,
Salmon, James P.
        (Retired, Specially Assigned),

JJ.

Opinion by Woodward, J.

Filed: October 1, 2014

On August 3, 2011, a jury in the Circuit Court for Charles County found appellant, Donald R. Twigg, guilty of second degree rape, third degree sexual offense, incest, and sexual child abuse. The victim was appellant's minor daughter, and the offenses occurred between the years 1974 and 1979. On October 17, 2011, the circuit court imposed a separate sentence on each conviction, to be served consecutively, totaling forty years of incarceration, followed by a fifteen-year suspended sentence for the sexual child abuse conviction, with five years of probation.

On appeal to this Court, appellant presents one issue for review,[1] which we have re-phrased as a question:

> Did the trial court err in imposing separate sentences on appellant for second degree rape, third degree sexual offense, and incest?

We will answer this question in the affirmative, and vacate all of the sentences imposed on appellant and remand the case for the imposition of a new sentence.

## BACKGROUND

In the underlying criminal action, appellant was indicted by a Grand Jury in Charles County, Maryland on October 29, 2010, on six counts: (1) sexual child abuse; (2) carnal knowledge; (3) second degree rape; (4) second degree sexual offense; (5) third degree sexual offense; and (6) incest. The victim of all of the charges was appellant's daughter, Ms. M., who was born on March 26, 1964. The offenses charged in the indictment allegedly occurred

---

[1] Appellant's issue presented, in the words of his brief, is as follows:

> Whether separate convictions and/or sentences for second degree rape, third degree sexual offense, and/or incest cannot [sic] stand.

from 1974 to 1979, when Ms. M. was nine to fourteen years old. On August 2 and 3, 2011, appellant was tried in the circuit court before a jury on all six charges.

At trial, Ms. M. testified that, beginning when she "was around the age of 7 years old," appellant began to sexually abuse her, and the abuse continued until she was "[r]oughly 15 and ½." Specifically, Ms. M. stated that, while she was living at home, appellant would come into her room at night and put his hand under her shirt or nightgown, which later progressed to appellant putting "his finger inside of [her] vagina and . . . [her] hand on [appellant's] penis . . . until he had an orgasm." In addition, Ms. M. testified that, "around age 12, [appellant] started to penetrate [her] with his penis." Ms. M. indicated that the instances of penetration ceased when she was approximately fifteen and a half years old. Ms. M. said that overall, the incidents of vaginal intercourse occurred "several times." According to Ms. M., these incidents occurred in the basement of the family home and in appellant's van in nearby parking lots.

Ms. M. also acknowledged that she was currently involved in several lawsuits against appellant concerning family property and bank accounts. She testified, however, that the property disputes were not the reason that she had come forward with allegations of sexual abuse.

Detective Corporal Kenneth Klezia, of the Charles County Sheriff's Office's Special Victims Unit, testified that, on October 9, 2010, he met with Ms. M. to conduct a recorded telephone call between Ms. M. and appellant. During the recorded conversation, appellant

stated that he always used condoms when having sex with Ms. M. to prevent pregnancy.

At the close of the State's case-in-chief, appellant moved for judgment of acquittal pertaining to the second degree sexual offense charge, which was granted. Appellant then testified in his own defense, denying all allegations of sexual abuse and claiming a misunderstanding regarding the recorded telephone conversation. In addition, appellant testified to several recent disputes between himself and Ms. M. involving jewelry, money, and property.

At the close of all of the evidence, appellant moved for judgment of acquittal as to the carnal knowledge count, which the trial court took under advisement. The jury returned verdicts of guilty on the charges of: sexual child abuse (from July 1, 1974 to January 1, 1979); carnal knowledge (from March 25, 1974 to June 30, 1976); second degree rape (from July 1, 1976 to March 25, 1978); third degree sexual offense (from July 1, 1976 to March 25, 1978); and incest (from March 25, 1974 to January 1, 1979). The court then granted appellant's motion for judgment of acquittal as to the carnal knowledge count.

On October 17, 2011, the circuit court sentenced appellant to consecutive sentences of: twenty years for second degree rape; ten years for third degree sexual offense; ten years for incest; and a suspended sentence of fifteen years for sexual child abuse, with five years' supervised probation. Appellant timely noted an appeal to this Court.

### STANDARD OF REVIEW

In *Khalifa v. State*, the Court of Appeals explained the standard of review governing

3

a constitutional claim:

> "When a claim is based upon a violation of a constitutional right it is our obligation to make an independent constitutional appraisal from the entire record. But this Court is not a finder of facts; we do not judge the credibility of the witnesses nor do we initially weigh the evidence to determine the facts underlying the constitutional claim. It is the function of the trial court to ascertain the circumstances on which the constitutional claim is based. So, in making our independent appraisal, we accept the findings of the trial judge as to what are the underlying facts unless he is clearly in error. We then re-weigh the facts as accepted in order to determine the ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed."

382 Md. 400, 417 (2004) (quoting *Harris v. State*, 303 Md. 685 (1985)). The Court of Appeals further counseled that, "although we do not engage in *de novo* fact-finding, our application of the law to the facts is *de novo*." *Khalifa*, 382 Md. at 417 (citation omitted).

## **DISCUSSION**

On appeal to this Court, appellant argues that "the application of principles of double jeopardy provide[] that the convictions and/or sentences for second degree rape, third degree sexual offense, and/or incest must merge into the conviction and/or sentence for sexual child abuse." Appellant cites to *Nightingale v. State*, 312 Md. 699 (1988), in support of the proposition that, "separate judgments for child abuse and underlying sexual offenses of any kind or degree violate the prohibition against double jeopardy." Appellant argues that, "although the Legislature amended the law pertaining to child abuse in response to *Nightingale* in order to allow separate sentences for child abuse and the underlying conduct, there was no provision for retrospective application of the change" that would apply to

4

appellant's conduct from 1974 to 1979. Any such retrospective application, according to appellant, would violate both federal and state constitutional prohibitions against *ex post facto* laws. Appellant concludes that, because the several sex offenses merge into the sexual child abuse for sentencing purposes, the "judgments on the charges of second degree rape, third degree sexual offense, and incest" must be vacated.

In response, the State argues that, "[w]hen a legislature has clearly indicated that it intends to permit multiple punishment[s] for offenses that otherwise would be considered the 'same offense' pursuant to the test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932), double jeopardy principles do not prevent the imposition of multiple sentences in a single trial." Further, the State asserts that the General Assembly has provided "unmistakably clear legislative intent to permit separate sentences," and thus, appellant's sentences are not violative of double jeopardy. Accordingly, the State concludes that "[t]he trial court properly imposed separate sentences on [appellant]'s convictions for child abuse, second degree rape, third degree sexual offense, and incest." We agree with appellant and will explain.

# I.

## The Required Evidence Test

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides the criminally accused with protection from, *inter alia*, multiple punishment stemming from the

5

same offense." *Purnell v. State*, 375 Md. 678, 691 (2003), *superseded by statute on other grounds as recognized in Alexis v. State,* 209 Md. App. 630, 677 (2013). "[D]espite the lack of a double jeopardy clause in its Constitution, Maryland's common law provides protection from double jeopardy to the criminally accused." *Purnell,* 375 Md. at 691. "Multiple punishment challenges generally arise in two different sets of circumstances: those involving two separate statutes embracing the same criminal conduct, and those involving a single statute creating multiple units of prosecution for conduct occurring as a part of the same criminal transaction." *Richmond v. State*, 326 Md. 257, 261 (1992) (citations omitted).

When resolving whether two offenses are deemed the same for the purpose of a double jeopardy challenge, Maryland courts have generally applied the *Blockburger* "required evidence test" set forth by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). *See Miles v. State*, 349 Md. 215, 219 (1998) ("We have often pointed out that, as a matter of Maryland common law, the normal standard for determining whether one offense merges into another is what is usually called the 'required evidence test.'"). The *Blockburger* required evidence test "focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." *State v. Jenkins*, 307 Md. 501, 517 (1986) (citations omitted).

In *State v. Lancaster*, 332 Md. 385 (1993), the defendant was found guilty pursuant to two statutes:

6

> Maryland Code (1957, 1992 Repl. Vol.), Art. 27, § 464C(a)(2), which prohibits, *inter alia*, engaging in fellatio "with another person who is 14 or 15 years of age and the person performing the sexual act is four or more years older than the other person." Based upon the same acts of fellatio, the defendant was also found guilty of committing an oral sex act in violation of Art. 27, § 554, which makes it unlawful, *inter alia*, for a person to take "into his or her mouth the sexual organ of any other person . . . ."

*Id.* at 389-90. After receiving separate sentences under each statute, the defendant appealed to the Court of Special Appeals. *Id.* at 390. The Court of Special Appeals vacated the sentence imposed under § 554, reasoning that, "the § 554 offense was an included offense which, for sentencing purposes, merged into the § 464C(a)(2) offense." *Id.* at 390-91.

The Court of Appeals granted certiorari to "consider the State's argument that the § 554 offense charged in this case has a distinct element not found in the § 464C(a)(2) offense and that, for this reason, the § 554 offense is not included within the § 464C(a)(2) offense and therefore does not under Maryland law merge into the § 464C(a)(2) offense." *Id.* The Court of Appeals explained that, under Maryland law, the *Blockburger* required evidence test was to be utilized as a "threshold test," and that "[i]t is only when there is no merger under the required evidence test that other criteria are considered to determine whether the offenses should merge." *Id.* at 394.

The Court discussed the required evidence test in detail:

> We have often pointed out that under settled Maryland common law, the usual rule for deciding whether one criminal offense merges into another or whether one is a lesser included offense of the other, when both offenses are based on the same act or acts, is the so-called required evidence test.

7

> **The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.** Stated another way, the required evidence is that which is minimally necessary to secure a conviction for each offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts, merger follows[.]
>
> **When there is a merger under the required evidence test, separate sentences are normally precluded. Instead, a sentence may be imposed only for the offense having the additional element or elements.**
>
> **When applying the required evidence test to multi-purpose offenses, *i.e.,* offenses having alternative elements, a court must examine the alternative elements relevant to the case at issue.**

*Id.* at 391-92 (internal alterations, quotations, ellipses, and citations omitted) (emphasis added).

The Court of Appeals identified § 464C(a)(2) and § 554 as "multi-purpose" statutory provisions—*i.e.*, containing alternative elements in the disjunctive—and explained that in analyzing a multi-purpose statute a court must apply the required evidence test to the element or elements before it. *Id.* at 398-99. The Court proceeded, applying the required evidence test to the multi-purpose § 554 statute:

> The statutory element of § 554 relevant to this case is the defendant's "taking into his . . . mouth the sexual organ of any other person . . . ." This element would appear to be fully encompassed by

8

the elements of the § 464C(a)(2) offense, because a forbidden "sexual act" under § 464C(a)(2) is statutorily defined as including fellatio and cunnilingus. The § 554 offense has no additional elements. A person cannot commit a fourth degree sexual offense under §464C, as charged in this case, without also violating § 554. Consequently, we reject the State's argument that the § 554 offense of which the defendant was convicted contained an element distinct from the elements of the § 464C(a)(2) offense of which he was convicted. The State has not established any error in the Court of Special Appeals' holding that the § 554 offense is an included offense and, for sentencing purposes, merges into the § 464C(a)(2) offense.

*Id.* at 401.

In *Nightingale v. State*, 312 Md. 699 (1988), the Court of Appeals considered two defendants who claimed that their sentences for child abuse and sexual offenses could not stand, because the crimes were the same under the required evidence test of *Blockburger*. *Id.* at 702. The first defendant, Nightingale, received two consecutive fifteen-year sentences for child abuse and second degree sexual offense, resulting from his conduct between 1977 and 1982.[2] *Id.* at 701. The second defendant, Myers, was found guilty of two counts of child abuse, one count of second degree sexual offense, two counts of third degree sexual offense, and two counts of fourth degree sexual offense, on two consolidated informations stemming from his conduct from 1983 through 1985. *Id.* Myers received four concurrent sentences for the first criminal information (the longest being twenty years for second degree sexual

---

[2] The crimes committed in *Nightingale v. State*, 312 Md. 699 (1998), were during part of the same time period that appellant in the case *sub judice* committed his crimes. As will be discussed *infra*, *Nightingale* and *White v. State*, 318 Md. 740 (1990), were superseded by statute in 1990.

offense), three concurrent sentences for the second criminal information (the longest being fifteen years for child abuse with ten years suspended); and the sentences for the second criminal information were made consecutive to those imposed in the first criminal information. *Id.* at 702. The Court of Special Appeals affirmed the convictions and sentences of Nightingale and Myers in two unreported opinions. *Id.* at 701-02.

The Court of Appeals granted certiorari to determine whether

> separate convictions and sentences for both child abuse and second, third, or fourth degree sexual offense [are] improper where the State relies on and proves the sexual offense to sustain the child abuse conviction[.]

*Id.* at 700.

After analyzing the relevant statutes, the Court stated

> that child abuse, taken in its broadest sense, involves certain elements (*e.g.*, physical harm and a particular relationship between actor and victim) that none of the sexual offenses do. By the same token, each of the sexual offenses requires some element (*e.g.*, performance of a sexual act or sexual contact and sexual arousal or gratification) that child abuse does not. But the analysis does not end at this point. When a multi-purpose criminal statute is involved, we refine it by looking at the alternative elements relevant to the case at hand.

*Id.* at 705.

The Court then concluded

> that each jury could have found the defendant before it guilty of child abuse based solely on evidence of a sexual offense in some degree. If that were done, then the sexual offense became, in effect, a lesser included offense of sexual child abuse, and . . . the offenses are the same for double jeopardy purposes.

10

*Id.* at 708.

The Court, however, could not merge the sexual offenses into the child abuse convictions under the required evidence test, because "we cannot tell whether these general verdicts of guilty were based on the use of sexual offenses as lesser included offenses (or elements) of child abuse, or whether the child abuse verdicts were based on other reasons (*e.g.*, some sort of sexual molestation which the juries thought did not rise to the level of a sexual offense in any degree)." *Id.* Nevertheless, the Court resolved the ambiguity in favor of the defendants and set aside the judgments on the sexual offense counts. *Id.*

Turning now to the matter *sub judice*, it is clear to this Court that, pursuant to the *Blockburger* required evidence test as set forth in *Lancaster* and *Nightingal*e, appellant's convictions for second degree rape, third degree sexual offense, and incest merge into the conviction for sexual child abuse for sentencing purposes. *Nightingale* specifically provides that, if a child abuse conviction is based solely on underlying sex offenses, the underlying offenses will merge into the child abuse conviction for sentencing purposes. The record before this Court demonstrates that the State based its argument for sexual child abuse solely on the underlying sexual offenses committed by appellant, *i.e.*, second degree rape, third degree sexual offense, incest, and carnal knowledge from 1974 through 1979. Our analysis, however, is not complete, because we next must determine whether the legislative intent underlying the child abuse statute prevents merger from occurring in the instant case.

11

## II.

## Legislative Intent

The Supreme Court has carved out an exception to the application of merger when the required evidence test under *Blockburger* has been satisfied. In *Albernaz v. United States*, 450 U.S. 333 (1981), the Supreme Court considered whether sentences for conspiracy to import marijuana and conspiracy to distribute marijuana were permitted under the required evidence test. *Id.* at 335. Petitioners received consecutive sentences under each statutory provision, with the total sentence exceeding the maximum that could have been imposed under either conspiracy to import or conspiracy to distribute. *Id.* As an initial matter, the Court reviewed the *Blockburger* test, labeling it a "rule of statutory construction . . . to be used to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively." *Id.* at 337 (internal quotations omitted). The Court explained:

> Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.

*Id.* at 344.

The Court then proceeded to affirm the sentences of the petitioners, determining that the required evidence test was superceded by the fact that "Congress intended to permit the imposition of consecutive sentences for violations of § 846 and § 963." *Id.* at 343.

12

Less than two years later, in *Missouri v. Hunter*, 459 U.S. 359 (1983), the Supreme Court granted certiorari to decide

> whether the prosecution and conviction of a criminal defendant in a single trial on both a charge of "armed criminal action" and a charge of first degree robbery—the underlying felony—violates the Double Jeopardy Clause of the Fifth Amendment.

*Id.* at 360. The respondent was sentenced, pursuant to Missouri state law, to ten years for robbery and a consecutive fifteen years for armed criminal action. *Id.* at 362. The Supreme Court expressly rejected the view of the Missouri Supreme Court, which concluded that the offenses were "the same offense" pursuant to *Blockburger*, and thus separate sentences violated the double jeopardy clause. *Id.* at 364-65. The Court emphasized the priority of legislative intent over the *Blockburger* required evidence test, stating:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368-69. Upon remanding the matter back to the state court, the Supreme Court concluded that, "[h]ere, the Missouri Legislature has made its intent crystal clear. Legislatures, not courts, prescribe the scope of punishments."[3] *Id.* at 368.

---

[3] As noted by the State in its brief in the instant case, subsequent to the Supreme Court's decisions in *Albernaz* and *Hunter*, Maryland case law evidences an adoption of the idea that legislative intent controls the *Blockburger* test. *See, e.g., Frazier v. State*, 318 Md. 597, 613-14 (1990) (noting that clear legislative intent mandating separate punishments is

(continued...)

13

Shortly following the *Albernaz* and *Hunter* decisions, the Court of Appeals had occasion to scrutinize the legislative intent underlying the then child abuse statute, Maryland Code (1957, 1987 Repl. Vol), Art. 27, § 35A, the same statute under which appellant in the case *sub judice* was convicted.[4] *White v. State*, 318 Md. 740 (1990). White was convicted in the circuit court of first degree murder and child abuse. *Id.* at 741. White received a sentence of life imprisonment for the first degree murder conviction and a consecutive fifteen-year prison term for the child abuse conviction under Art. 27, § 35A. *Id.*

The Court of Appeals granted certiorari to determine "whether a conviction of child abuse should merge into a murder conviction where both convictions are based on the same act or acts." *Id.* at 741-42. As to the legislative intent underlying Art. 27, § 35A, the Court declared that

> [t]here is nothing in the language of the Child Abuse Statute, or in its legislative history, indicating whether the General Assembly intended that a parent or one having custody should be sentenced for both child abuse and murder where the malicious act causing physical injury ultimately led to the death of the child. **Clearly, in this regard the statute is ambiguous as to whether separate punishment is in order.**

*Id.* at 748 (emphasis added). The Court concluded that, "in the absence of express statutory language to the contrary, a child abuse conviction merges into a homicide conviction when

---

[3](...continued)
dispositive of the *Blockburger* test).

[4] Maryland Code (1957, 1987 Repl. Vol), Art. 27, § 35 A is now codified in Criminal Law Article, §§ 3-601 & 3-602.

both are based on the same act or acts." *Id.*

Although we indicated above that appellant's convictions for second degree rape, third degree sexual offense, and incest would merge into his conviction for sexual child abuse for sentencing purposes pursuant to the required evidence test, *Hunter*, *Albernaz*, and subsequent Maryland decisions instruct that legislative intent can act to override convictions that would otherwise merge under *Blockburger*. In *White*, the Court of Appeals recognized that *Albernaz* allowed for the General Assembly to provide for separate punishments in the child abuse statute for the underlying offenses*,* but determined that the legislative intent of Art. 27, § 35A on this subject was ambiguous. *White*, 318 Md. at 745, 748. In the instant matter, because the acts that form the basis of appellant's convictions occurred between 1974 and 1979, he was subject to the child abuse statute existing during that time—namely, Art. 27, § 35A. Because, under *White*, there is no clear legislative intent behind Art. 27, § 35A to provide separate punishment for any offense underlying the child abuse conviction, our determination that the *Blockburger* required evidence test mandates the merger of appellant's sexual offense convictions into the sexual child abuse conviction for sentencing purposes remains undisturbed, at least for the moment. We must now consider the 1990 amendment by the Maryland General Assembly to the child abuse statute.

### III.

### The 1990 Amendment

Following the Court of Appeals' decisions in *Nightingale* and *White*, the General

Assembly amended the Maryland child abuse statute by passing House Bill 815, and its companion bill, Senate Bill 421. The amendment added the following language to Art. 27, § 35A:

> (b)(2) The sentence imposed under this section may be imposed separate from and consecutive to or concurrent with a sentence for any offense based upon the act or acts establishing the abuse.

Art. 27, § 35A (eff. July 1, 1990) (underlines omitted). The purpose clause of Chapter 604 of the Acts of 1990—the legislation that amended Art. 27, § 35A—reads as follows:

> **FOR** the purpose of reversing the holdings of the Maryland Court of Appeals in the cases of Nightingale v. State (312 Md. 699, 542 A2d 373 (1988)) and White v. State (filed February 28, 1990) by providing that if a conviction is entered against an individual for murder, rape, sexual offense, any sex crime, or any crime of violence, and a conviction is also entered for child abuse, a court may impose a sentence for the other offenses separate from and consecutive to or concurrent with a sentence imposed for child abuse; and generally relating to penalties for child abuse.

(underlines and strikeouts omitted).

The Court of Appeals commented on the above purpose clause in *Fisher v. State*, 367 Md. 218 (2001):

> The purpose clause of Chapter 604 of the Acts of 1990 declares that the Legislature intended to allow the imposition of multiple sentences "if a conviction is entered against an individual for murder, rape, sexual offense, any sex crime, or any crime of physical violence, and a conviction is also entered for child abuse." The philosophy underlying present § 35C(b)(3)[formerly § 35A(b)(2)] is articulated in a letter from an Assistant Attorney General to the Chairman of the House Judiciary Committee urging the adoption of the bill that

16

enacted § 35[A(b)(2)].  In part the letter reads:

> **Child abuse and the underlying crimes involve separate societal evils.** The underlying crime is one of violence against a member of society.  Child abuse is a breach of custodial or familial trust.  **The two crimes should be punished separately and the person who violates both laws should be exposed to a greater possible penalty.**

*Id.* at 242-43 (first emphasis in original; second emphasis added).

The State recognizes that the Court of Appeals' decision in *White* finds ambiguity in the legislative intent underlying Art. 27, § 35A, and argues that the General Assembly's intent in enacting the 1990 statutory amendment to overrule *Nightingale* and *White* was "not because the legislature made a new judgment as to whether separate sentences were permissible, but to correct an existing misperception."  The State asserts that "[t]he amendment is not being applied retroactively to [appellant], nor is he subject to an *ex post facto* law, as he also contends."  Rather, the State argues, appellant is being subjected to the law as the legislature originally intended, pre-*Nightingale* and *White*.  We disagree with the State and shall explain.

Our review of the legislative history of the 1990 amendment to Art. 27, § 35A reveals no language evidencing the General Assembly's intent to make the amendment apply retroactively.  Nor is there anything in the record, or the legislative history, that supports the State's contention that the purpose of the 1990 amendment to the child abuse statute was to clarify the General Assembly's original intent rather than formulate a new intent.  Indeed, the

17

legislative history indicates that the General Assembly believed that it had been given newfound authority to override the required evidence test by amending the child abuse statute to expressly say so.

An official copy of the 1990 Bill Analysis for Senate Bill 421, located in the bill file for Senate Bill 421, which is maintained on microfilm in the state archives, clarifies that the legislature intended to exercise new authority following the Supreme Court's decision in *Hunter*. The Bill Analysis includes a synopsis of *Nightingale*, followed by a synopsis of *Hunter*, the latter stating: "[T]he United States Supreme Court held that if a legislature specifically authorizes cumulative punishment under two statutes, a prosecutor may seek and a trial court or jury may impose cumulative punishment under such statutes in a single trial." Below the summary of the *Hunter* decision is a handwritten note that states: "Merger No longer is valid!!" In our opinion, this is convincing evidence that the legislature was made aware of its authority to override merger under the required evidence test by "specifically authoriz[ing]" cumulative punishment for certain designated of offenses, and thus the General Assembly acted to do so prospectively by amending Art. 27, § 35A.[5] Accordingly, we conclude that the 1990 Amendment to the child abuse statute does not override the

_____

[5] In light of our determination that the 1990 amendment to the child abuse statute is prospective only, there is no legal basis for the retroactive application of such amendment, and thus the issue of whether the retroactive application of the 1990 amendment violates Maryland or federal *ex post facto* laws does not arise. *See Doe v. Dep't of Pub. Safety and Corr. Servs.*, 430 Md. 535, 568-69 (2013) (holding that the Maryland sex offense registry statute, which is expressly made retroactive, violates the Maryland constitutional prohibition against *ex post facto* laws).

18

teachings of *Nightingale* and *White* in the instant case, which mandate the merger of appellant's sexual offense convictions into his sexual child abuse conviction for sentencing purposes.

## IV

## Retroactive Application of *Nightingale* and *White*

Finally, the State argues that appellant should "not receive the benefit of the Court of Appeals' decisions in *Nightingale* or *White* . . . as his offenses were committed before those cases were decided." Specifically, the State asserts that "[a]ll of the acts constituting [appellant's] conviction of child abuse predated the 1988 decision in *Nightingale* and the 1990 decision in *White*. The evidence showed that [appellant's] abuse began in 1971, although the jury's verdict was based upon his conduct during the period from 1974 to 1979." Again, we are not persuaded.

"In the overwhelming majority of cases, a judicial decision sets forth and applies the rule of law that existed both before and after the date of the decision. . . . [I]n the ordinary case, no issue of a 'prospective only' application arises." *Am. Trucking Ass'ns Inc. v. Goldstein*, 312 Md. 583, 591 (1988) (citations omitted). Retroactivity "is overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 535 (1991). Where, however, the judicial decision overrides prior law and declares a new principle of law, "prospective only" application arises. *See Houghton*

19

*v. Cnty. Comm'rs of Kent Cnty.*, 307 Md. 216, 220 (1986). The Court of Appeals has explained that, "where a decision has applied settled precedent to new and different factual situations, the decision always applies retroactively, and it is only where a new rule constitutes a clean break with the past that the question of prospective only application arises." *Denisyuk v. State*, 422 Md. 462, 478 (2011) (quoting *United States v. Johnson*, 457 U.S. 537, 549 (1982)) (internal quotations and alterations omitted).

It is clear that in *Nightingale* and *White* the Court of Appeals "applied settled precedent to new and different factual situations." *See Denisyuk*, 422 Md. at 478. In *Nightingale*, the Court applied the principles of the required evidence test under *Blockburger* to sexual offenses that formed the factual basis for a conviction for sexual child abuse. 312 Md. at 708. Indeed, the sexual offenses underlying the child abuse conviction is *Nightingale* occurred between 1977 to 1982, which overlaps the time frame when appellant's sexual offenses were committed in the case *sub judice*: 1974 to 1979. In *White*, the Court used the principles of statutory construction to ascertain whether the legislative intent of the child abuse statute supported separate punishments for murder and child abuse where both convictions were based on the same act or acts. 318 Md. at 748. Therefore, the Court of Appeals in *Nightingale and White* elucidated the same law, and interpretation thereof, as would apply to appellant's conduct here. Accordingly, we hold that from 1974 through 1979, when appellant committed the sexual offenses that formed the basis for his sexual child abuse conviction, all of appellant's convictions were subject to Maryland merger law as articulated

20

by the Court of Appeals in *Nightingale* and *White.*

## V.

## Remand

Because in the instant case the convictions for second degree rape, third degree sexual offense, and incest merge into the conviction for sexual child abuse, the separate sentences for those convictions must be vacated. *See Moore v. State*, 198 Md. App. 655 (2011). As a result, appellant is no longer subject to the trial court's sentences totaling forty years of incarceration. What is left is a fifteen-year suspended sentence on the sexual child abuse conviction. It is clear, however, that, had the trial judge been aware that a sentence could be imposed on only the sexual child abuse conviction, the imposition of a fifteen-year suspended sentence would have been highly unlikely. The issue then is whether this Court can remand the case to the trial court for the purpose of imposing a new sentence on appellant for the sexual child abuse conviction, and if so, whether there are any limitations on the sentence that can be imposed by the trial judge, other than the maximum penalty prescribed by the statute in effect at the time of the commission of the offenses underlying the sexual child abuse conviction. Because the parties did not address these issues in their respective briefs, this Court requested supplemental memoranda on the following questions:

> 1. Assuming, *arguendo*, that appellant's convictions for second degree rape, third degree sexual offense, and incest merge into the child sexual abuse conviction for sentencing purposes (and thus the sentences for all convictions except child sexual abuse will be

21

vacated),[6] what authority permits or precludes this Court from remanding the case to the circuit court for purposes of resentencing appellant on the child sexual abuse conviction?

II. Assuming that a remand is either authorized or not precluded by law, what, if any, limitations are placed on the trial court in resentencing appellant, other than the maximum penalty prescribed by the child abuse statute for offenses committed from July 1, 1974 through January 1, 1979.[7]

For the reasons that follow, we hold that (1) under the circumstances of the instant case, this Court has the discretionary authority to remand the case to the trial court for the purpose of imposing a new sentence on appellant for his sexual child abuse conviction, and (2) on remand, the trial court may impose any sentence it deems proper up to the maximum penalty prescribed by the child abuse statute for such offense committed from July 1, 1974 through January 1, 1979.

## A.

### Authority to Remand for a New Sentence

In general, "where merger is deemed to be appropriate, this Court merely vacates the sentence that should be merged without ordering a new sentencing hearing." *Carroll v. State*,

---

[6] As will be discussed *infra*, this Court has the authority, in its discretion, to vacate the sentence on the sexual child abuse conviction and remand the case for the imposition of a new sentence.

[7] We do not believe, as appellant claims, that by addressing these issues, we will be rendering an "improper advisory opinion." Under Maryland Rule 8-131(a), this Court may decide an issue not raised in or decided by the trial court "if necessary or desirable to guide the trial court or to avoid the expense and delay of an other appeal." In light of our decision on the merger issue raised in the instant appeal, these issues will necessarily arise and need to be resolved for the guidance of the trial court.

22

202 Md. App. 487, 518 (2011), *aff'd* 428 Md. 679 (2012); *see also Washington v. State*, 200 Md. App. 641, 664 (2011); *Moore v. State*, 198 Md. App. 655, 718 (2011). Under Maryland Rule 8-604(d), however, "[i]f the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, *or that justice will be served by permitting further proceedings*, the Court may remand the case to a lower court." (Emphasis added). In other words, in a case where the trial court fails to effect a merger as required by law, this Court has the authority, in its discretion, to remand the case for the purpose of the trial court imposing a new sentence on the conviction into which the other conviction or convictions merged. Such discretionary authority was implicitly recognized in the Court of Appeals' opinion in *Jones v. State*, 414 Md. 686 (2010).

In *Jones*, this Court held in an unreported opinion that the appellant's conviction for first degree assault should merge, for sentencing purposes, into his conviction for robbery with a dangerous weapon of the same victim. *Id.* at 690. Instead of simply vacating the appellant's sentence on the first degree assault conviction, we vacated the sentences on *both* convictions and remanded the case to the circuit court "for imposition of a new sentence in accordance with the views expressed in this opinion." *Id.*

At the resentencing hearing, the appellant offered mitigating evidence, but the trial court refused to consider such evidence. *Id.* at 690-91. The court stated: "I don't believe there is anything to mitigate on. I think this was sent back for merger." *Id.* at 691. On appeal, the appellant argued that the trial court should have permitted him to offer mitigating

23

evidence before resentencing him, and thus erred in failing to do so. *Id.* This Court

disagreed with the appellant, but, on certiorari review, the Court of Appeals agreed with the

appellant, holding that the trial court erred in "refus[ing] to allow mitigating evidence to be

adduced prior to the resentencing." *Id.* at 692.

In its analysis, the Court of Appeals began by focusing on the mandate of this Court:

> "Sentence imposed under Count 3 of indictment No. 103149031 for first-degree assault and sentence imposed under Count 1 of indictment No. 103149033 (robbery with a deadly weapon) vacated; case remanded to the Circuit Court for Baltimore City for imposition of a new sentence in accordance with the views expressed in this opinion; judgments otherwise affirmed; costs to be divided equally between appellant and the Mayor and City Council of Baltimore."

*Id.* at 690.

The Court went on to explain:

> The mandate of the intermediate appellate court was clear: the trial court was to issue "a new sentence in accordance with the views expressed in [its] opinion." The court certainly did not expressly foreclose the trial court from considering mitigating evidence. It is also significant that the "views expressed" did not include a directive that the trial court impose a term of years, or any particular sentence. The court simply held that a merger of two of the sentences was required. . . .
>
> * * *
>
> Thus, the Court of Special Appeals only instructed the trial court to merge the two convictions, for sentencing purposes, without any additional express or implied limitations.

*Id.* at 692.

The Court then determined that the specification of "a new sentence" in our mandate meant that the proceeding on remand was "a sentencing." *Id.* at 694. According to the Court, a trial judge has "very broad discretion in sentencing," while at the same time must comply with the "the standard rules of sentencing," namely Rule 4-342. *Id.* at 693-95. Because Rule 4-342(f) requires that the trial court afford the defendant the opportunity, before the imposition of sentence, "to make a statement and to present information in mitigation of punishment," the Court concluded that the failure of the trial court in *Jones* to comply with such requirement mandated a resentencing. *Id.* at 703.

In sum, the Court of Appeals relied on the language of this Court's mandate in *Jones* in reaching its holding that the appellant was entitled to present mitigating evidence at his resentencing. Our mandate provided that the sentences for *both* the merging conviction and the conviction remaining after merger be vacated and that the trial court impose "a new sentence" on remand; our mandate also did not place any limitations on the remand proceedings. Therefore, we conclude that the Court of Appeals implicitly recognized our discretionary authority, in cases where the trial court fails to properly merge the convictions for sentencing purposes, to vacate the sentences on all of the convictions involved in the merger and to remand the case to the trial court for the imposition of a new sentence on the conviction remaining available for a sentence after merger has been accomplished.

**B.**

**Limitations on Resentencing**

Assuming that this Court exercises its discretion in the instant case to vacate the sentences on all of appellant's convictions and to remand the case to the circuit court for the imposition of a new sentence on the sexual child abuse conviction, what limitations, if any, are placed on the trial judge at the resentencing? As indicated earlier, the trial judge in the instant case imposed consecutive sentences for second degree rape, third degree sexual offense, and incest, totaling forty years of incarceration, followed by a consecutive fifteen-year *suspended* sentence for sexual child abuse. The issue that will squarely face the trial court at resentencing is whether the court is limited to imposing only a suspended sentence of up to fifteen years, or is free to impose (1) a period of incarceration of up to fifteen years, or (2) a split sentence.

Appellant argues that a new sentence on the sexual child abuse conviction that would result in any active incarceration or executed time would be an "illegal increase in the sentence" in violation of "Md. Code, Courts & Judicial Proceedings Article [("C.J.")] § 12-702; Maryland Rule 4-345; Maryland's existing merger law; *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); and State and federal principles of double jeopardy, as well as constitutional due process concerns." Specifically, appellant claims that the determination of whether there is an illegal increase in the sentence is confined to a consideration of the sentence previously imposed on the sexual child abuse conviction,

26

because C.J. § 12-702(b) and Rule 4-345(b) consistently refer to the sentence in the singular, with "no reference to multiple sentences or offenses."

The State responds that appellant "fails to explain, however, how a change in his 15 year suspended sentence would constitute an 'increase' from 40 years of active incarceration." The State further argues that, even if the imposition of a different sentence would constitute an "increase" in the sentence, there is no absolute prohibition on an increased penalty at a resentencing. The State points to the fact that the Supreme Court overturned the *Pearce* case in *Alabama v. Smith*, 490 U.S. 794 (1989), and that C.J. § 12-702(b) does provide for the imposition of "a sentence more severe than the sentence previously imposed for the offense" if certain conditions are met. The State concludes that appellant "is not entitled to the windfall of a suspended sentence."

As the Court of Appeals stated in *Jones*, "a 'resentencing' or a 'new sentence' is a 'sentencing.'" 414 Md. at 694. "'[I]n resentencing . . . the sentencing court must approach its task [of sentencing] as if no sentence had ever been imposed.' The trial court is charged, therefore, with 'exercising its sentencing discretion' as if the sentence was occurring for the first time." *Id.* (quoting *Bartholomey v. State*, 267 Md. 175, 193 (1972)). The Court stated that the trial judge has very broad discretion in sentencing. 414 Md. at 693. The exercise of that discretion includes the court's discretion to suspend the sentence and/or order confinement. *See* Md. Code Ann., Crim. Proc. Art. § 6-219(b) (2008 Repl. Vol.). Finally, "[t]here is no absolute prohibition on an increased penalty at a resentencing or after a new

27

trial." *Parker v. State*, 193 Md. App. 469, 489 (2010).

Based upon the above principles, we conclude that, where this Court remands a case for the purpose of imposing a new sentence because of the trial court's previous failure to properly merge a defendant's convictions, the trial court is free to impose any sentence permitted by law for the conviction that remains after the merger. In the context of the facts of the instant case, the trial court could impose any sentence on appellant up to a maximum of fifteen years of incarceration, which was the maximum sentence allowable for child abuse committed between 1974 and 1979. *See* Md. Code Ann., Art. 27, § 35A(b) (1957, 1987 Repl. Vol.).

If the trial court should impose any period of incarceration on appellant for the sexual child abuse conviction, we do not view such sentence as an "increase" in his previous sentence. In imposing sentences for multiple convictions in a single case, a trial judge considers not only the sentence for each conviction, but also the total sentence for all of the convictions together. Indeed, the Maryland Sentencing Guidelines are structured to reflect such a dual consideration. Maryland Sentencing Guidelines Manual §§ 3, 9 (2014). The sentencing guidelines provide a guideline range for each conviction, and then an overall guideline for all of the convictions, viewed as a whole. *Id*. at § 9. Here, when appellant's sentences are viewed as a whole, appellant received forty years of incarceration, followed by a fifteen-year suspended sentence and five years' probation. As a result of the merger of the convictions, the sentences totaling forty years of incarceration must be vacated. To say that

28

the imposition of any incarceration, even the maximum of fifteen years, is an "increase" over appellant's previous forty-year sentence is to defy common sense.

In addition, the trial judge in the instant case could have imposed the same sentence by sentencing appellant to consecutive sentences of ten years' incarceration for third degree sexual offense, ten years' incarceration for incest, fifteen years' incarceration for sexual child abuse, followed by twenty years' incarceration for second degree rape, with all but five years suspended. In such event, appellant would have no basis to complain that a new sentence of up to fifteen years' incarceration was an "increase" in his sentence. Not only is there no logical reason to leave appellant's ultimate sentence to a matter of chance, such result would be contrary to the directive to trial judges in sentencing that they "tailor the criminal sentence to fit the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background." *Jones*, 414 Md. at 693 (citations and quotations omitted).

### C. Conclusion

In the instant case, because appellant's convictions for second degree rape, third degree sexual offense, and incest must merge into his sexual child abuse conviction for sentencing purposes, this Court has the authority, in its discretion, to vacate the sentences on all of appellant's convictions and remand the case to the trial court for the purpose of imposing a new sentence on the sexual child abuse conviction. Such new sentence can be

any sentence permitted by law for a sexual child abuse conviction where the abuse occurred between 1974 and 1979. We are directed by Rule 8-604(d) to exercise that discretion if "justice will be served." Here, we believe that justice will be served by the exercise of our discretion. It will be so ordered.

**SENTENCES IMPOSED ON THE CONVICTIONS FOR SECOND DEGREE RAPE, THIRD DEGREE SEXUAL OFFENSE, INCEST, AND SEXUAL CHILD ABUSE VACATED; ALL CONVICTIONS OTHERWISE AFFIRMED; CASE REMANDED TO THE CIRCUIT COURT FOR IMPOSITION OF NEW SENTENCE ON SEXUAL CHILD ABUSE CONVICTION IN ACCORDANCE WITH THE VIEWS EXPRESSED IN THIS OPINION. COSTS TO BE PAID BY CHARLES COUNTY.**