*Donald R. Twigg v. State*, No. 3, September Term 2015

**CRIMINAL LAW — MERGER —** For crimes committed under a multi-purpose criminal statute, such as the pre-1990 version of the child abuse statute, only one of the lesser included offenses, (when none merges with the other(s)), must merge for sentencing purposes with the greater offense under the *Blockburger* required evidence test. When it is unclear upon which lesser included offense the jury relied in convicting a defendant of child abuse under the pre-1990 statute, only the offense carrying the greatest maximum sentence merges with child abuse under *State v. Johnson*, 442 Md. 211 (2015). Here, Petitioner's sentence for second degree rape is merged into the sentence for the greater inclusive offense of child abuse.

**CRIMINAL LAW — APPELLATE COURT'S DISCRETION TO REMAND —** Under Maryland Rule 8-604, appellate courts have discretion to remand for resentencing on a conviction that was not challenged by a defendant on appeal. Resentencing on an unchallenged offense does not violate double jeopardy principles because the defendant lacks an expectation of finality in his total sentence by appealing other aspects of his sentence. In this case, the Court of Special Appeals did not err by remanding for a resentencing hearing on Petitioner's unchallenged child abuse conviction.

**CRIMINAL LAW — STATUTORY CONSTRUCTION — AGGREGATE APPROACH TO VIEWING INCREASE —** Md. Code Ann., Cts. & Jud. Proc. § 12-702(b) generally provides that, on remand for a new sentencing hearing, the court "may not impose a sentence more severe than the sentence previously imposed for the offense[.]" In a case involving multiple counts of conviction, at which one or more sentences have been vacated and the case is remanded for a new sentencing hearing, the court violates § 12-702(b) only when the new sentence on the remaining counts is greater in the aggregate than the originally imposed sentence.

Circuit Court for Charles County
Case No. 08-K-10-001000
Argued: September 3, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 3

September Term, 2015

_____

DONALD R. TWIGG

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned),

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: March 28, 2016

This case presents several issues relating to merger of sentences in criminal cases under the "required evidence test" of *Blockburger v. United States*, 284 U.S. 299 (1932). The issues have their genesis in Petitioner Donald R. Twigg's conviction of child abuse, second degree rape, third degree sexual offense, and incest against his daughter. As charged, any one of the three sexual offenses could have provided the basis for the child abuse conviction. The trial court sentenced Petitioner to a total of forty years' incarceration: consecutive terms of twenty years for second degree rape, ten years for third degree sexual offense, and ten years for incest; for child abuse, the court imposed a fifteen-year sentence, but suspended the entirety of that time in favor of five years' probation.

We must decide whether all, or only one, of the sexual offenses merge for sentencing purposes with the sentence for child abuse. We also must decide whether Maryland law permits a remand to afford the trial court the opportunity to consider resentencing on the child abuse conviction and, if so, the limits within which the court must operate when considering a new sentence for that crime. We hold that only the sentence Petitioner received for second degree rape must be vacated, by application of *State v. Johnson*, 442 Md. 211 (2015). We further hold that Maryland Rule 8-604(d) authorizes a remand for a new sentencing hearing and, at that hearing, the sentencing court has the discretion to resentence Petitioner to a term of active incarceration on the child abuse conviction.

I.

*The Trial*

In 2011, Petitioner was tried before a jury in the Circuit Court for Charles County on an indictment charging that he committed the crime of child abuse of his daughter, by

engaging in various sexual offenses against her during the period spanning March 25, 1974, and January 1, 1979. Each of the charged sexual offenses was alleged to have occurred within a particular subpart of that nearly five-year timeframe, while his daughter was between the ages of nine and fourteen years old.

We need not detail all of the evidence presented at trial. It is enough to say that the jury heard evidence, primarily through the testimony of the daughter, from which the jury could find beyond a reasonable doubt that during the identified timeframes Petitioner committed the following four crimes.[1] Between July 1, 1976, and March 25, 1978, he committed a third degree sexual offense[2] by touching his daughter's vagina and making

---

[1] We have not included two additional charges that are no longer of concern. The trial court granted a judgment of acquittal as to the charges of second degree sexual offense and carnal knowledge, the latter of which, effective July 1, 1976, was subsumed within the then-newly enacted rape statute.

[2] Then codified in Article 27, § 464B, third degree sexual offense provided in relevant part:
> (a) *What constitutes.* — A person is guilty of a sexual offense in the third degree if the person engages in sexual contact:
> . . .
> > (3) With another person who is under 14 years of age and the person performing the sexual contact is four or more years older than the victim.
> (b) *Penalty.* — Any person violating the provisions of this section is guilty of a felony and upon conviction is subject to imprisonment for a period of not more than 10 years.

Article 27, § 461 defined sexual contact as follows:
> (f) *Sexual contact.* — "Sexual contact" as used in §§ 464B and 464C, means the intentional touching of any part of the victim's or actor's anal or genital areas or other intimate parts for the purposes of sexual arousal or gratification or for abuse of either party and includes the penetration, however slight, by any part of a person's body, other than the penis, mouth, or tongue, into the genital or anal opening of another person's body if that penetration can be reasonably construed as being for the purposes of sexual arousal or

her touch his penis.  Between July 1, 1976, the effective date of the then-new rape statute,

and March 25, 1978, he committed second degree rape.[3]  Between March 25, 1974, and

January 1, 1979, he committed incest[4] by engaging in vaginal intercourse with his daughter.

And, throughout that time he committed child abuse "by engaging in sexual molestation

and sexual exploitation."[5]

---

gratification or for abuse of either party.  It does not include acts commonly expressive of familial or friendly affection, or acts for accepted medical purposes.

[3] Then codified in Article 27, § 463, second degree rape provided in relevant part:
(a) *What constitutes.* — A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:
. . .
(3) Who is under 14 years of age and the person performing the act is at least four years older than the victim.
(b) *Penalty.* — Any person violating the provisions of this section is guilty of a felony and upon conviction is subject to imprisonment for a period of not more than 20 years.

[4] Incest, at the time the offense was committed, was codified in Article 27, § 335 as follows:
Every person who shall knowingly have carnal knowledge of another person, being within the degrees of consanguinity within which marriages are prohibited by law in this State, shall be deemed guilty of felony, and upon conviction thereof shall be punished by imprisonment in the penitentiary for a term not less than one nor more than ten years, in the discretion of the court.

[5] Then codified in Article 27, § 35A, the child abuse statute provided in relevant part:
(a) *Penalty.* — Any parent, adoptive parent or other person who has the permanent or temporary care or custody or responsibility for the supervision of a minor child under the age of eighteen years who causes abuse to such minor child shall be guilty of a felony and upon conviction shall be sentenced to not more than fifteen years in the penitentiary.
(b) *Definitions.* — Wherever used in this section, unless the context clearly indicates otherwise:
. . .
2. *"Child"* means any person under the age of eighteen (18) years.
. . .

3

At the close of all the evidence, the court instructed the jury that, to convict Petitioner of the crime of "sexual child abuse," the jury was required to find, among other elements, that Petitioner engaged in sexual molestation or exploitation of his daughter. The court further instructed that the dates identified in the charging document for child sexual abuse "cover the entire period," that child sexual abuse is "a generic type of charge," and that "the other [sexual offense] charges are specifications within that generic charge." The State argued in closing that Petitioner committed the "sexual molestation or sexual exploitation" element of child abuse by engaging in any of the charged sexual offenses. The State did not seek to prove or argue in closing that the child abuse charge was—or could be—based on evidence of molestation or exploitation other than that which the State offered in support of the various charged sexual offenses.

The jury completed a verdict sheet finding Petitioner guilty of child abuse, second degree rape, third degree sexual offense, and incest. The jury was not directed either by the judge or on the verdict sheet to specify which of the charged sexual offense(s) satisfied the molestation/exploitation element of the child abuse conviction. As mentioned at the

7. *"Abuse"* shall mean any: (A) physical injury or injuries sustained by a child as a result of cruel or inhumane treatment or as a result of malicious act or acts by any parent, adoptive parent or other person who has the permanent or temporary care or custody or responsibility for supervision of a minor child (B) any sexual abuse of a child, whether physical injuries are sustained or not.

8. *"Sexual abuse"* shall mean any act or acts involving sexual molestation or exploitation, including but not limited to incest, rape, or sexual offense in any degree, sodomy or unnatural or perverted sexual practices on a child by any parent, adoptive parent or other person who has the permanent or temporary care or custody or responsibility for supervision of a minor child.

outset, the court imposed consecutive sentences for rape, third degree sexual offense, and incest, and a fifteen-year suspended sentence for child abuse, for a total of forty years of active incarceration.

*The Appeal*

Petitioner argued before the Court of Special Appeals that he was entitled to have the "separate convictions and/or sentences" for the three sexual offenses vacated as lesser included offenses of that crime. He rested the argument on the Fifth Amendment provision, held applicable to the states, that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb," requiring merger of a lesser included offense as set forth in *Blockburger*. For that proposition, Petitioner relied primarily upon the reasoning and holding of *Nightingale v. State*, 312 Md. 699 (1988). The Court of Special Appeals agreed with Petitioner that he was entitled to have all three sexual offenses— second degree rape, third degree sexual offense, and incest—vacated, under *Nightingale*. *Twigg v. State*, 219 Md. App. 259, 272 (2014). At the time the intermediate appellate court issued *Twigg*, we had not yet decided *State v. Johnson*, 442 Md. 211 (2015).

The Court of Special Appeals further held that,

> (1) under the circumstances of the instant case, this Court has the discretionary authority to remand the case to the trial court for the purpose of imposing a new sentence on [Petitioner] for his sexual child abuse conviction, and (2) on remand, the trial court may impose any sentence it deems proper up to the maximum penalty prescribed by the child abuse statute for such offense committed from July 1, 1974 through January 1, 1979.

219 Md. App. at 282.

The Court of Special Appeals concluded that resentencing on the greater offense is

5

permissible because the trial court had failed to merge the lesser offenses, *id*. at 284-85, reasoning that the trial judge is entitled to consider the "total sentence for all of the convictions together," *id*. at 287. The Court of Special Appeals explained that it would defy common sense to conclude that Petitioner's sentence would be unlawfully increased, even if the judge on remand were to impose the maximum fifteen years of active incarceration on the child abuse conviction, because Petitioner's total sentence would not exceed the total forty-year sentence imposed originally. *Id.*

Both Petitioner and the State sought issuance of a writ of certiorari to review the judgment of the Court of Special Appeals. Petitioner asks:

1. When an appellate court holds that a lesser included offense (or offenses) should have been merged into the greater offense and it vacates the sentences that were merged for the lesser offense (or offenses), does the appellate court have authority to vacate the sentence imposed for the greater offense and remand for re-sentencing/new sentencing for that offense where there has been no challenge on appeal to the legality of the conviction or sentence for the greater offense?

2. In this case, did the Court of Special Appeals have authority and/or discretion to remand the case for re-sentencing/new sentencing on the greater offense of child sexual abuse after correctly holding that the lesser included offenses of second degree rape, third degree sexual offense, and incest must merge into child sexual abuse for sentencing purposes?

The State asks:

Where Twigg was convicted of child sexual abuse and three statutory sexual offenses (incest, second degree rape, and third degree sexual offense) – any one of which supports a conviction for child sexual abuse – should only one of the statutory sexual offenses merge for purposes of sentencing, rather than all three?

We answer "yes" to all three questions and, accordingly, affirm in part and reverse in part the judgment of the Court of Special Appeals. We begin by addressing the State's cross-

6

petition on merger and then will address Petitioner's two questions on resentencing.

## II.

The State urges us to reverse the Court of Special Appeals's holding that all of the sexual offense convictions merge for purposes of sentencing. In the State's view, when, as happened here, the jury did not specify which of the sexual offenses satisfied the molestation/exploitation element of child abuse, the law requires that only one of those offenses, in this case, second degree rape, merges for sentencing purposes with the conviction and sentence for child abuse. For that proposition, the State relies on our recently-decided *Johnson* opinion. The State further argues that *Nightingale* does not mandate a different result.[6] Petitioner counters that *Johnson* does not dictate the outcome the State seeks and, contrary to the State's reading of *Nightingale*, application of that case requires that the sentences for all three of the sexual offenses—second degree rape, incest, and third degree sexual offense—merge with the sentence for child abuse.

Resolution of this dispute requires us first to determine what we did—and did not—decide in *Nightingale* insofar as it relates to the State's cross-petition.[7]

---

[6] The General Assembly effectively overruled our decision in *Nightingale* by amending the child abuse statute in 1990 to permit separate sentences for child abuse and any underlying crime(s) that establish the gravamen of the child abuse conviction. Laws of Maryland, ch. 604 (1990) (enacted by H.D. 815, 1990 Leg., 400th Sess. (Md. 1990)); *see also Tribbitt v. State*, 403 Md. 638, 652-53 (2008) (discussing the amendment). The State does not challenge here the holding of the Court of Special Appeals that the 1990 amendment of the child abuse statute was not intended to apply retroactively. *See Twigg v. State*, 219 Md. App. 259, 278 (2014).

[7] Petitioner raises in his Cross-Respondent's Brief/Reply Brief a preliminary "Motion to dismiss the question presented in State's Conditional Cross-Petition." He asserts that because child sexual abuse is now governed by its own statute, which contains an anti-

7

There were two petitioners in *Nightingale*, Carol Nightingale and Albert James Joseph Myers, Sr. Both were charged with committing child abuse under the then-extant statute, *see supra* note 5, by engaging in sexual molestation or exploitation of their respective daughters.

Petitioner Nightingale was tried before a jury on charges of second degree rape, incest, common law battery, perverted practice, and second degree sexual offense, in addition to child abuse. All of the crimes were alleged to have been committed "on or about 1977 to 1982" when his daughter was "under 14 years of age." 312 Md. at 700-01. The victim "testified that on various occasions during the years in question her father had engaged in sexual activity with her, beginning with fondling and culminating with vaginal intercourse, fellatio, and cunnilingus." *Id*. at 701. Nightingale was acquitted on the charges of battery, perverted practices, second degree rape, and incest. The jury found him guilty of child abuse and second degree sexual offense. For those crimes, the court imposed consecutive sentences of fifteen years' imprisonment. *Id*.

Petitioner Myers was tried before a jury on three consolidated criminal informations, only two of which contained charges resulting in guilty verdicts. *Id*. at 701-02 & n.2. The first of those, Number 7317, charged Myers with committing child abuse

merger provision, "[t]here is no issue of public interest or import to be resolved" by answering the State's question; moreover, if we decide that question in the State's favor, he will have suffered the "extreme prejudice" of facing a more severe sentence (a thirty-five-year maximum imprisonment) than what he faced on remand from the judgment and mandate of the Court of Special Appeals (a fifteen-year maximum imprisonment). For reasons that will be made clear in this opinion, we deny the motion.

as well as second, third, and fourth degree sexual offenses upon his daughter; the charges were alleged to have occurred "between November, 1983 through February, 1985," while she was under fourteen years of age. Number 7319 charged Myers with child abuse by committing third and fourth degree sexual offenses against his daughter in a single incident "on or about August 3, 1985," during which, the daughter testified, Myers "thrust his hand inside her panties and touched her vagina." *Id*. at 701-02. The jury found Myers guilty of all the charges in Number 7317 and 7319. In case Number 7317, the court imposed four concurrent sentences, the longest of which was twenty years of incarceration for second degree sexual offense. In case Number 7319, the court imposed three concurrent sentences, the longest of which was fifteen years for child sexual abuse, with ten of those years suspended, and made the sentences consecutive to those in Number 7317. *Id*. at 702.

Both Nightingale and Myers argued before this Court that, "for double jeopardy purposes, their convictions and sentences for child abuse and sexual offenses cannot stand because the crimes are the same under the required evidence test of *Blockburger*." *Id.* at 702. We described that test as follows:

> If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited.

*Id.* at 703 (quoting *Newton v. State*, 280 Md. 260, 268 (1977)).[8] We noted, with regard to

---

[8] The *Blockburger* Court used essentially the same language: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

9

the then-applicable child abuse statute:

> [C]hild abuse, taken in its broadest sense, involves certain elements (*e.g.*, physical harm and a particular relationship between actor and victim) that none of the sexual offenses do. By the same token, each of the sexual offenses requires some elements (*e.g.*, performance of a sexual act or sexual contact and sexual arousal or gratification) that child abuse does not. But the analysis does not end at this point. When a multi-purpose criminal statute is involved, we refine it by looking at the alternative elements relevant to the case at hand.

312 Md. at 705.

This "alternative elements" approach was not newly minted in *Nightingale*; the Court had employed it in several prior cases including, for example, *Newton v. State*.[9] Petitioner Newton had been convicted of and separately sentenced for felony murder and the underlying attempted robbery of the murder victim. *Newton*, 280 Md. at 262-63. We noted in *Nightingale* that the *Newton* Court had "looked to the alternative elements involved in the felony murder" variety of first degree murder and, because punishment for both the "underlying felony and murder committed in the perpetration of that felony constitute, under the required evidence test, double punishment for the same offense in violation of the Fifth Amendment's double jeopardy clause," the underlying felony conviction merged with the murder conviction. *Nightingale*, 312 Md. at 705 (quoting *Newton*, 280 Md. at 273-74). We summarized the alternative elements analysis employed in *Newton* and other cases involving multi-purpose statutes:

> When, as here, a multi-purpose criminal statute is involved, the court must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of

---

[9] *See also State v. Boozer*, 304 Md. 98, 104 (1985); *Thomas v. State*, 277 Md. 257, 269 (1976).

10

alternative elements that do not apply. It must, in other words, treat a multi-purpose statute written in the alternative as it would treat separate statutes. The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would. If, when we look at the applicable alternative elements, a lesser offense in effect becomes one of the elements of another offense, the *Blockburger* test is met. It is met because, by virtue of that fact, all the elements of the lesser offense must be established to prove the other; only the other offense has any additional elements.

*Id*. at 706-07 (internal quotation marks and citation omitted).

We recognized that sexual offense statutes, as well as the then-extant child abuse statute, are multi-purpose statutes, in that all of them punish "several different types of conduct, which may be treated as separate statutory offenses for double jeopardy purposes." *Id*. at 706. We identified the elements of each of the relevant crimes charged in Nightingale's and Myers's cases and considered those elements in light of the evidence produced, the court's instructions, the prosecutor's closing arguments, and, in Nightingale's case, how the judge answered the jury's question, asking whether "'touching, in the wrong places, alone, constitute[s] child abuse as described in our instructions.'" *Id*. at 707-08 (alteration in original).

With respect to criminal information Number 7319 in Myers's case, we reasoned that "the jury must have found a sexual offense as the basis of the child abuse verdict, because that information involved but a single incident of sexual contact." *Id*. at 708. As for the remaining child abuse charges (in Nightingale's case and in information Number 7317 in Myers's case), in each, the child abuse charge spanned a period of time. With respect to those child abuse charges, we were unable to discern whether the juries had based

11

their guilty verdicts on one or more of the charged sexual offenses or, instead, some other form of sexual molestation or exploitation not rising to the level of a sexual offense. We said:

> [A] jury could have reached various decisions as to child abuse and sexual offenses, all of which were reflected in general verdicts of guilty.
>
> The problem, then, is that we cannot tell whether these general verdicts of guilty were based on the use of sexual offenses as lesser included offenses (or elements) of child abuse, or whether the child abuse verdicts were based on other reasons (*e.g.*, some sort of sexual molestation which the juries thought did not rise to the level of a sexual offense in any degree). In these circumstances we resolve the ambiguity in favor of the defendants and set aside the judgments on the sexual offense counts.

*Id.*

In Nightingale's case, we merged the second degree sexual offense into the child abuse conviction. In Myers's case Number 7317, we merged all three sexual offenses into the child abuse conviction.

Notable for present purposes, we did not explain *why* we merged all of the underlying sexual offenses into the respective child sexual abuse convictions. Indeed, the only ambiguity expressly identified in *Nightingale* related to whether the juries based their guilty verdicts on some act of sexual molestation or exploitation other than one of the charged sexual offenses.

The precise question put before us by the State in the present case was not considered in *Nightingale*, and, consequently, that case does not dictate the outcome here. We are not left, however, to write on a clean slate, as the answer to the question presented is found in *Johnson*, our recent decision applying *Blockburger*.

*State v. Johnson*

12

Petitioner Johnson was convicted of felony murder and two underlying felonies, kidnapping and robbery, and sentenced separately on all three convictions. He appealed, arguing that he was entitled, by application of *Blockburger*, to have the sentences for both underlying felonies merge with his conviction and sentence for felony murder. The Court of Special Appeals in an unreported opinion agreed with Johnson and vacated the sentences for both underlying felonies.

We granted the State's petition for certiorari and reversed the judgment of the Court of Special Appeals. We concluded that the law requires that only one of the underlying "predicate" felonies merges and, because it was not clear upon which of the two felonies the jury found Johnson guilty of felony murder, "the conviction for the predicate felony with the greatest maximum sentence merges for sentencing purposes." 442 Md. at 221. We reasoned:

> Because only one predicate felony is required to support a felony murder conviction, once the State proves a predicate felony and the death of the victim as a result of that felony, the crime of felony murder is complete, and, for the required evidence test's purposes, all of felony murder's elements have been satisfied such that the elements of any additional predicate felonies would be redundant. In other words, once one merger for sentencing purposes occurs, as to felony murder and one predicate felony, the elements of any additional predicate felonies are no longer required elements of felony murder. For the required evidence test's purposes, the pairing of the conviction for one predicate felony with the felony murder conviction leaves no room for a pairing with any additional predicate felonies. In sum, once the conviction for one predicate felony merges, application of the required evidence test does not result in further merger of convictions for other predicate felonies.

*Id*. at 222-23 (footnote omitted).

*The Present Case*

13

The reasoning of *Johnson* applies equally to the case before us. The jury found Petitioner guilty of second degree rape, incest, and third degree sexual offense as well as child sexual abuse. Any one of the sexual offenses satisfies the molestation/exploitation "element" of child sexual abuse. By tracking the Court's reasoning in *Johnson*, the answer to the *Blockburger* multiple punishment merger question before us becomes clear. Once the State proves a predicate sexual offense and abuse of a child victim as a result of that predicate offense, the crime of child sexual abuse is complete, and, for purposes of the required evidence test, the sexual molestation/exploitation element of child sexual abuse is satisfied, rendering redundant, for the purpose of *Blockburger* multiple punishment merger, additional predicate sexual offenses.

It is not necessary that Petitioner's jury be unanimous with respect to the act that involved the sexual molestation or exploitation of his daughter. *See Cooksey v. State*, 359 Md. 1, 23-24 (2000); *cf. Rice v. State*, 311 Md. 116, 122-23 (1987) (holding that the jury need not be unanimous with regard to the mode of commission of theft, so long as the jury was unanimous that the property was wrongfully taken from the owner). This is so because abuse of a child is the gravamen of the offense of child sexual abuse, not the particular sexual act involving molestation or exploitation itself. *See Crispino v. State*, 417 Md. 31, 45, 47-50 (2010).

The jury was instructed, and the State argued, that each of the sexual offenses was charged as a "specification" of child abuse. So long as the jurors were unanimous that Petitioner committed child sexual abuse, which obviously they were, it is of no consequence that they may not have agreed on which of the underlying sexual offenses

14

supplied the "element" of sexual molestation or exploitation that supported the child abuse conviction.

Petitioner argues that he is entitled to have all of the lesser included offenses merge because the State charged child abuse as a continuing offense. He states that it is "simply impossible" to discern from this record "whether the jury convicted petitioner of child sexual abuse based upon *all* of the underlying sexual conduct and/or offenses, *generally* (or, perhaps, based on some other conduct that did not rise to the level of a sexual offense in any degree)." Putting aside that *Nightingale*—the sole case upon which Petitioner relies for this proposition—did not discuss the question presented here, nothing in this trial record remotely suggests that the jury found Petitioner guilty of child sexual abuse based on "some other conduct that did not rise to the level of a sexual offense in any degree." Likewise, given the evidence at trial, we cannot imagine that any one or more of the jurors found Petitioner guilty of child abuse only by combining his crimes of rape, incest, and third degree sexual offense, or some combination of two of the three.

Finally, because we cannot discern which of the three sexual offenses the jury relied upon in finding Petitioner guilty of child abuse, we resolve that ambiguity by holding, as we did in *Johnson*, 442 Md. at 221, 224-25, that Petitioner is entitled to have the crime that carries the greatest maximum sentence merge for sentencing purposes with the child abuse sentence. This means, and we so hold, that Petitioner is entitled to have vacated the twenty-year sentence for second degree rape.[10] Petitioner is not entitled to merger of the sentences

---

[10] It is clear under case law of the United States Supreme Court and Maryland that, for purposes of resentencing, the remedy is to vacate only the sentence imposed upon the lesser

imposed on his convictions for the crimes of incest and third degree sexual offense.

III.

The Court of Special Appeals ordered a remand to the Circuit Court for a new sentencing hearing on the child abuse conviction. Petitioner raises two concerns in connection with that disposition. He first argues that the Court of Special Appeals, and by implication this Court, does not have the authority to order the remand. He further argues that imposing a new sentence on the child abuse conviction would run afoul of the "constitutional parameters embodied in *North Carolina v. Pearce*" and implicate "double jeopardy and related due process concerns."

The State responds that Maryland Rule 8-604 expressly authorizes the remand and, at the new sentencing hearing, the Circuit Court may exercise its discretion to resentence Petitioner for child abuse without offending double jeopardy and due process principles.[11]

---

included offense, not the conviction itself. *See North Carolina v. Pearce*, 395 U.S. 711, 717-19 (1969); *Brooks v. State*, 439 Md. 698, 737 (2014) ("Sentences for two convictions must be merged when: (1) the convictions are based on the same act or acts, and (2) under the required evidence test, the two offenses are deemed to be the same, or one offense is deemed to be the lesser included offense of the other.").

[11] The State also maintains that Petitioner's challenge to the constitutional implications of resentencing "is not ripe for review because the trial court has not yet held a new sentencing hearing or imposed a new sentence on the child sexual abuse conviction." The State refers us to *Mercy Medical Center v. Julian*, 429 Md. 348, 379 n.17 (2012), which in turn cited *Toland v. Futagi*, 425 Md. 365, 390 (2012). We noted in those cases that this Court has "long forbidden" the practice of issuing an advisory opinion concerning an issue that is not "ripe," that is, one that involves "a matter which is future, contingent and uncertain." *See Hickory Point P'ship v. Anne Arundel Cty.*, 316 Md. 118, 130 (1989) (internal quotation marks omitted). Inasmuch as we decide, as a matter of first impression, that this case is properly remanded to the Circuit Court for a new sentencing, it is appropriate to advise the court of what the law permits the court to do in the exercise of its sentencing discretion. Md. Rule 8-131(a).

16

We agree with the State.

### *The Appellate Court's Authority to Remand for Resentencing*

Maryland Rule 8-604(d)(1) authorizes an appellate court to remand a case to a lower court if the appellate court "concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings." Rule 8-604(d)(2) further provides that, "[i]n a criminal case, if the appellate court reverses the judgment for error in the sentence or sentencing proceeding, the Court shall remand the case for resentencing."

This Court has recognized, with at least tacit approval, the propriety of resentencing on a greater offense upon merger for sentencing purposes of a lesser included offense. In *Jones v. State*, 414 Md. 686 (2010), we reviewed a ruling of a trial judge on remand following Jones's successful challenge of his sentence on appeal to the Court of Special Appeals. That Court held in an unreported opinion that merger was required under *Blockburger*, vacated both the sentences for the lesser included offense and the greater inclusive offense, and directed resentencing on the greater inclusive offense. *Id.* at 690. On remand, the trial court refused to allow Jones to argue in mitigation before imposition of the new sentence. *Id.* at 690-91. Jones appealed, claiming error in the trial court's refusal to permit argument. *Id.* at 691. We determined that the trial court had erred and remanded for a new sentencing proceeding. *Id.* at 692, 703. Important for present purposes, we expressed no concern that the Court of Special Appeals was without the authority to order a remand for resentencing on the greater offense. To the contrary, we stated that the trial court's "primary task" on remand was to conduct the "resentencing of

17

the petitioner" on the greater offense. *Id*. at 707.

Petitioner offers no authority for the proposition that remand for resentencing, as was done in *Jones* and as the Court of Special Appeals did in the present case, is unauthorized by Maryland statute, our rules, or our case law, and we are not aware of any.

*Double Jeopardy and Due Process*

Petitioner argues that resentencing on the child abuse conviction would run afoul of double jeopardy and due process protections. We disagree.

The Supreme Court has made clear that resentencing does not offend double jeopardy principles. The Court stated in *United States v. DiFrancesco*, 449 U.S. 117, 132 (1980), that the prohibition against multiple trials is the controlling principle in double jeopardy cases and the same prohibition precludes appellate review of an acquittal. The double jeopardy prohibition does not preclude either an appeal of a sentence or resentencing. *Id.* at 133. "[T]he pronouncement of sentence has never carried the finality that attaches to an acquittal," *id*.; likewise, resentencing following an appeal does not subject the defendant to "multiple" sentences, *id.* at 138-39. *See also Pennsylvania v. Goldhammer*, 474 U.S. 28, 29-30 (1985) (per curiam) (holding that the Double Jeopardy Clause does not prevent a state court from resentencing a defendant following reversal of some of the defendant's convictions on appeal).

Even more to the point is *North Carolina v. Pearce*, 395 U.S. 711 (1969). In that case, the Court held that the Double Jeopardy Clause does not bar the imposition of a longer sentence after a retrial and reconviction than was imposed in the original, vacated proceeding. *Id.* at 722-23. The *Pearce* Court was quite clear on that point: "A man who

18

is retried after his first conviction has been set aside may be acquitted. If convicted, he may receive a shorter sentence, he may receive the same sentence, or he may receive a longer sentence than the one originally imposed." *Id*. at 722.

Petitioner's due process argument is likewise unavailing. Petitioner appears to rely on the *Pearce* Court's discussion of due process concerns that might attend resentencing after a defendant's successful appeal. The *Pearce* Court was concerned specifically about the extent to which vindictiveness may play a role in the imposition of a harsher sentence following retrial. *Id.* at 725. The Court recognized the inherent unfairness of "imposing a heavier sentence" upon a defendant "for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." *Id*. at 723-24. Because due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial," the Court provided a prophylactic rule to guard against it:

> In order to assure the absence of such a motivation, . . . whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear [and] must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*Id*. at 725-26.

The Supreme Court has retreated from its analysis in *Pearce*. *See Texas v. McCullough*, 475 U.S. 134, 138 (1986) (explaining that "the evil the [*Pearce*] Court sought to prevent" was the vindictiveness of a sentencing judge, not the imposition of "enlarged sentences after a new trial"); *Alabama v. Smith*, 490 U.S. 794, 799-800 (1989) (stating that, absent a reasonable likelihood that an increased sentence was the "product of actual

19

vindictiveness on the part of the sentencing authority," the defendant retains the burden "to prove actual vindictiveness"). These cases clarify that vindictiveness is not to be presumed from the imposition of a more severe sentence on remand following the defendant's successful appeal.

Although *McCullough*, *Smith*, and even *Pearce* all concerned resentencing following reconviction, we see no material distinction, for purposes of protecting due process, between those cases and a remand for a new sentence on an unchallenged conviction—here, child abuse—when the sentence for a lesser included offense is merged on appeal by application of *Blockburger*. In that circumstance, a more severe sentence will not offend due process unless one of two situations occurs: either the record of the new sentencing hearing demonstrates a reasonable likelihood that an increased sentence was the product of actual vindictiveness on the part of the sentencing authority, *or* the defendant "prove[s] actual vindictiveness." *Smith*, 490 U.S. at 799-800.

### *§ 12-702(b) of the Courts and Judicial Proceedings Article*

We agree with the State that whatever remains of the *Pearce* doctrine in Maryland, insofar as it relates to this case, would be found in § 12-702(b) of the Courts and Judicial Proceedings Article of the Maryland Code.[12] *See Jones v. State*, 307 Md. 449, 454 (1986) (noting that § 12-702(b) codified the constitutional doctrine of *Pearce* and adopted "significant portions of the *Pearce* language"). The first sentence of subsection (b) states: "If an appellate court remands a criminal case to a lower court in order that the lower court

---

[12] Md. Code Ann., Cts. & Jud. Proc. § 12-702 (1988, 2013 Repl. Vol.). All further statutory citations are references to the Courts and Judicial Proceedings Article.

may pronounce the proper judgment or sentence . . . the lower court may impose any sentence authorized by law to be imposed as punishment for the offense." The next sentence of subsection (b) codifies *Pearce* and reads:

> However, [the court] may not impose a sentence more severe than the sentence previously imposed for the offense unless:
> (1)   The reasons for the increased sentence affirmatively appear;
> (2)   The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and
> (3)   The factual data upon which the increased sentence is based appears as part of the record.

Petitioner contends that this statutory language precludes imposition of a new sentence for his conviction of child abuse because any sentence that modifies the originally imposed, fully suspended sentence would constitute a "sentence more severe than the sentence previously imposed" for that crime.

We disagree, as did our colleagues on the Court of Special Appeals. For reasons we shall explain, even if, on remand, the trial court were to impose the then-applicable fifteen-year maximum sentence for child sexual abuse, that sentence would not violate § 12-702(b). We reach that conclusion by employing pertinent principles of statutory construction.

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the General Assembly. *State v. Johnson*, 415 Md. 413, 421 (2010). We begin with the plain meaning of the statute. *Meyer v. State*, 445 Md. 648, 676 (2015). If the statutory language is unambiguous and consistent with the purpose of the statute, our review ceases and we apply the normal and plain meaning of the statute. *Harrison-Solomon v. State*, 442 Md. 254, 265 (2015). When, however, the language is ambiguous because it gives rise to

21

more than one reasonable interpretation, we must look to other indicia to ascertain the intent of the General Assembly, "including the relevant statute's legislative history, the context of the statute within the broader legislative scheme, and the relative rationality of competing constructions." *Id.* at 265-66. In all cases, when confronted with construing the meaning of a statutory provision, we must provide a reasonable interpretation—one that is consonant with logic and common sense. *McCree v. State*, 441 Md. 4, 13 (2014).

Section 12-702(b) provides that, on remand, "[the court] may not impose a sentence more severe than the sentence previously imposed for the offense[.]" We must ascertain the meaning of the terms "sentence" and "offense." Those terms are used not simply in the context of the phrase, "[the court] may not impose a sentence more severe than the sentence previously imposed for the offense," but also in the context of the language that precedes that phrase: upon remand for resentencing, "the lower court may impose any sentence authorized by law to be imposed as punishment for the offense." *See Haile v. State*, 431 Md. 448, 470 (2013) (explaining the "longstanding principle of statutory construction" that requires courts to interpret a statute "by looking to the statutory scheme in its entirety rather than segmenting the statute and analyzing only its individual parts") (internal quotation marks omitted); *see also Diaz v. State*, 129 Md. App. 51, 84-85 (1999) (stating that "the issue in the instant case is not so much whether the word 'offense' should be singular or plural, but rather if the word includes 'count' or 'all counts comprising a singular criminal episode'").

Petitioner declares that "sentence" and "offense" are "unequivocally singular nouns." We are not nearly as convinced as Petitioner that this is so, in the context of § 12-

22

702(b). Those terms appear unambiguous when applied in a case involving conviction of only one count, yet those same terms are less than clear in cases involving multiple counts arising from a single criminal episode or transaction. In the latter, frequently occurring situation, it is not unreasonable to understand the terms as referring to the total sentence for all those counts upon which the defendant was convicted. In that situation, the General Assembly could well have intended "the offense" to refer to the criminal episode, encompassing all the counts of which the defendant was convicted, and "the sentence" to refer to the total sentence imposed for those component counts. To resolve this ambiguity, we turn first to the legislative history of the statute.

The legislative history of § 12-702(b) discloses that the General Assembly enacted that language in 1973 to codify the *Pearce* presumption of vindictiveness doctrine. *Gardner*, 420 Md. 1, 14-15 (2011). The 1973 Revisor's Note stated:

> As a result of this judicial history, we have a constitutional limitation on increase of sentence if there is an ordinary appeal and either a remand for sentencing or a re-conviction after a new trial. And we have a statutory limitation on increase of sentence if there is a conviction after a de novo appeal. What § 12-702 proposes is the codification of the case law, and the retention of the existing statutory law, thus providing a uniform approach to the problem, and one readily accessible to and understandable by those involved in criminal sentencing.

Laws of Maryland, ch. 2 (1973) (First Special Session), Revisor's Note to § 12-702(b).

Notwithstanding that § 12-702(b) was "Maryland's legislative response to the due process holding of *North Carolina v. Pearce*," it remains a "statement of legislative policy that stands independent of current Supreme Court notions of what due process may require." *Dixon v. State*, 364 Md. 209, 225-27 (2001) (quoting *Davis v. State*, 312 Md.

23

172, 178 (1988)).  That § 12-702(b), as a legislative enactment, remains independent of the Supreme Court's retreat from *Pearce*, however, does not address, much less resolve, the question presented by the case before us.  *See Gardner*, 420 Md. at 15 & n.5; *Dixon*, 364 Md. at 226-27.  What remains for determination is what constitutes a "more severe sentence" than one previously imposed for the "offense" at a new sentencing.  As to that question, the legislative history offers no clue.

The canon of statutory construction that requires a reasonable interpretation consistent with logic and common sense aids us in answering the question.  *See Briggs v. State*, 413 Md. 265, 275 (2010).  We conclude that, as the word is used in § 12-702(b), "offense" means not simply one count in a multi-count charging document, but rather the entirety of the sentencing package that takes into account each of the individual crimes of which the defendant was found guilty.

The notion of sentencing as a "package" is well-recognized, not simply by the Court of Special Appeals in the present case but also among our sister federal and state appellate courts.  The Court of Special Appeals reasoned that,

> [i]n imposing sentences for multiple convictions in a single case, a trial judge considers not only the sentence for each conviction, but also the total sentence for all of the convictions together.  Indeed, the Maryland Sentencing Guidelines are structured to reflect such dual consideration.  The sentencing guidelines provide a guideline range for each conviction, and then an overall guideline for all of the convictions, viewed as a whole.

*Twigg*, 219 Md. App. at 259 (citing the Maryland Sentencing Guidelines Manual, §§ 3, 9 (2014)).

The federal appellate courts are uniform in recognizing the "basic notion of how

24

sentencing decisions are made in cases involving multiple counts of conviction." *United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) (explaining that "sentencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence—the 'sentence package'—that reflects the guidelines and the relevant [sentencing] factors"); *accord United States v. Weingarten*, 713 F.3d 704, 712 (2d Cir. 2013); *United States v. Rodgers*, 278 F.3d 599, 604 (6th Cir. 2002); *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999); *United States v. Campbell*, 106 F.3d 64, 68 (5th Cir. 1997); *United States v. Sullivan*, 967 F.2d 370, 374-75 (10th Cir. 1992); *Kelly v. Neubert*, 898 F.2d 15, 17-18 (3d Cir. 1990); *United States v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989); *United States v. Gray*, 852 F.2d 136, 138 (4th Cir. 1988); *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987); *United States v. Hagler*, 709 F.2d 578, 579 (9th Cir. 1983); *United States v. Norton*, 657 F.2d 1003, 1004 (8th Cir. 1981) (per curiam).

The majority of our sister state appellate courts that have addressed the issue similarly view sentencing as a package. *See State v. Wade*, 998 A.2d 1114, 1120 (Conn. 2010) (holding that "the original sentencing court is viewed as having imposed individual sentences merely as component parts or building blocks of a larger total punishment for the aggregate convictions, and, thus, to invalidate any part of that package without allowing the court thereafter to review and revise the remaining valid convictions would frustrate the court's sentencing intent") (internal quotation marks omitted); *Adams v. State*, 696 S.E.2d 676, 679 (Ga. 2010); *Sanjari v. State*, 981 N.E.2d 578, 583 (Ind. Ct. App. 2013); *State v. Goncalves*, 941 A.2d 842, 848 (R.I. 2008).

25

We likewise agree with those courts that, "[a]fter an appellate court unwraps the package and removes one or more charges from its confines, the sentencing judge, herself, is in the best position to assess the effect of the withdrawal and to redefine the package's size and shape (if, indeed, redefinition seems appropriate)." *Pimienta-Redondo*, 874 F.2d at 14; *see also Townsend*, 178 F.3d at 567; *Shue*, 825 F.2d at 1114; *State v. Wade*, 998 A.2d at 1120; *Sanjari*, 981 N.E.2d at 583 (concluding that the aggregate approach gives the trial court the flexibility to carry out its intent to effectuate the goals of sentencing by imposing a sentence that fits both the crime and the criminal); *Goncalves*, 941 A.2d at 848 (explaining that the trial court "may correct the entire initial sentencing package to preserve the originally intended sentencing scheme").

Construing the "offense" in § 12-702(b) as referring in multi-count cases to the aggregate of the various component parts—i.e., individual counts—and the "sentence" in such cases as referring to the entire sentencing package readily comports with the widely held view of the realities of trial judges' approach to sentencing. Nothing in the plain language of the statute, moreover, precludes this construction of it.

Furthermore, attributing these meanings to "offense" and "sentence" in no way runs afoul of the clear legislative purpose behind the General Assembly's enactment of § 12-702(b), which we know was to codify the *Pearce* doctrine. Indeed, this construction is consonant with how federal and state appellate courts have applied the *Pearce* doctrine to resentencing after vacation on appeal of one or some counts of a multi-count offense.

The federal courts of appeal and majority of state appellate courts that have spoken on the subject are in accord in taking this view. *See Fowler*, 749 F.3d at 1023 ("[W]e adopt

26

the aggregate package approach endorsed by the majority of our sister circuits, and contemplated by the Supreme Court, for determining whether a sentence imposed under the guidelines has become more severe for purposes of invoking the *Pearce* presumption."); *Weingarten*, 713 F.3d at 714 ("Where one or more of several related counts have been vacated, and the district court on resentencing has increased the sentence on the remaining, related counts to maintain the same aggregate sentence as before, no presumption of vindictiveness applies."); *accord Townsend*, 178 F.3d at 570; *Campbell*, 106 F.3d at 68; *Sullivan*, 967 F.2d at 374-75; *Kelly*, 898 F.2d at 18; *Gray*, 852 F.2d at 138; *Hagler*, 709 F.2d at 579; *Norton*, 657 F.2d at 1004; *People v. Woellhaf*, 199 P.3d 27, 31 (Colo. App. 2007); *White v. State*, 576 A.2d 1322, 1329 (Del. 1990); *Adams*, 696 S.E.2d at 680; *State v. Harrington*, 805 N.W.2d 391, 394 (Iowa 2011); *State v. Keefe*, 573 A.2d 20, 22 (Me. 1990); *State v. Larson*, 783 P.2d 1093, 1096 (Wash. Ct. App. 1989).[13]

In summary, a defendant's sentence will be considered to have increased under § 12-702(b) only if the total sentence imposed after retrial or on remand is greater than the originally imposed sentence. Accordingly, if on remand in the present case the Circuit Court were to exercise its discretion to impose on the child abuse conviction any period of active incarceration, even if it were the maximum of fifteen years' incarceration available

---

[13] This construction of § 12-702(b), moreover, does not result in unfair prejudice to a defendant who has been successful on appeal in having one or more, but not all, convictions and/or sentences vacated. *See Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008) (explaining that, when a trial court on remand "impose[s] a sentence on the remaining counts longer than the sentence originally imposed on those particular counts, but yielding an aggregate sentence no longer than the aggregate sentence initially imposed," the defendant "may [have] gain[ed] nothing from his limited success on appeal, but he will also lose nothing, as he will serve no more time than the trial court originally ordered").

at the time of Petitioner's crime, such a sentence would not violate § 12-702(b) because, when added to the combined twenty years of incarceration for third degree sexual offense and incest, Petitioner's total sentence would not be greater than the total forty-year sentence originally imposed.[14]

<div style="margin-left:50%">

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR RESENTENCING CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PETITIONER.**

</div>

---

[14] The State does not seek to have vacated the sentences for incest and third degree sexual offense, for both of which Petitioner received the maximum sentence. We do not intend this opinion to be read as precluding, in the appropriate case, vacation of all sentences originally imposed on those convictions and sentences left undisturbed on appeal, so as to provide the court maximum flexibility on remand to fashion a proper sentence that takes into account all of the relevant facts and circumstances. The only caveat, aside from the exception set forth in § 12-702(b)(1)-(3), is that any new sentence, in the aggregate, cannot exceed the aggregate sentence imposed originally.