*Nathan Joseph Johnson v. State of Maryland*, No. 109, September Term, 2018.  Opinion by Nazarian, J.

**REMAND FROM COURT OF APPEALS — MOTION TO RECONSIDER OR REMAND FOR RESENTENCING**

By a 2-1 vote, the Court declined to exercise its discretion to remand this case for resentencing and, as a result, denied the State of Maryland's motion to reconsider.

Circuit Court for Queen Anne's County
Case No. 17-CR-17-290

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 109

September Term, 2018

**ON MOTION FOR RECONSIDERATION**
_____


NATHAN JOSEPH JOHNSON

v.

STATE OF MARYLAND
_____


Graeff,
Nazarian,
Zarnoch, Robert A.
  (Senior Judge, Specially Assigned),

JJ.
_____


Opinion by Nazarian, J.
_____


Filed:  November 18, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

By Order dated November 10, 2020, the Court of Appeals remanded this case to this Court, without affirming or reversing, in order that we might "clarify the basis of [our] decision on April 14, 2020 denying Petitioner's motion for reconsideration." This Opinion explains that decision.

## I.      BACKGROUND

### A. The Appeal

After a bench trial in the Circuit Court for Queen Anne's County, Nathan Joseph Johnson was convicted of involuntary manslaughter, reckless endangerment, possession with intent to distribute heroin and fentanyl, and possession of heroin and fentanyl. The circuit court sentenced him to ten years of incarceration (all but seven years suspended) for involuntary manslaughter and a consecutive twenty years (all but five suspended) for distribution. The court also stated at sentencing that it would "generally suspend and [run] concurrently" sentences for reckless endangerment and possession with intent to distribute fentanyl.

On appeal, Mr. Johnson raised four contentions. *First*, relying on *State v. Thomas*, 464 Md. 133 (2019), he argued that the evidence was insufficient as a matter of law to sustain his conviction for involuntary manslaughter under a theory of gross negligence. *Second*, he argued that the (circumstantial) evidence was not sufficient to support his conviction for distribution of a controlled substance. *Third*, he contended that the circuit court erred in admitting text messages from a cell phone. And *fourth*, he argued that the trial court had erred in imposing separate sentences for distribution and involuntary manslaughter. The State opposed these contentions.

**B. The Merits Opinion**

We held oral argument on December 3, 2019 and issued a reported opinion on January 31, 2020. *Johnson v. State*, 245 Md. App. 46 (2020). We won't recount the entire opinion here, but a few points bear on the motion for reconsideration and our decision to deny it.

*First*, this was the first overdose-related involuntary manslaughter case to reach our Court after the Court of Appeals issued *Thomas*, 464 Md. at 169–72, and the first opportunity to identify situations that would or wouldn't satisfy *Thomas's* new standard.[1] After analyzing the facts of this case against the *Thomas* factors, we concluded that "[i]nterpreting *Thomas* to assume knowledge of a drug's contents with its riskiness on the part of all low-level, infrequent dealers would lead to the *per se* rule *Thomas* warned against[,]" and that "if this drug sale qualifies as grossly negligent, we struggle to imagine a transaction that wouldn't." *Johnson*, 245 Md. App. at 64. Accordingly, we held that the evidence was insufficient to support a finding that he had acted with gross negligence, and we reversed the conviction for involuntary manslaughter. *Id.* at 69.

*Second* and *third*, we agreed with the State that the evidence was sufficient to support the conviction for possession with intent to distribute, *id.* at 65–68, and that the trial court had not erred in admitting the available text messages between Mr. Johnson and the victim. *Id.* at 68–69.

---

[1] *Compare McCauley v. State*, 245 Md. App. 562 (2020) (affirming gross negligence involuntary manslaughter conviction where defendant was a habitual dealer who knew the contents of the drugs she sold and warned buyers about them).

As a result, we affirmed the judgments except the conviction for involuntary manslaughter. During the recent argument in the Court of Appeals, there were several references to the involuntary manslaughter conviction being vacated. It wasn't. The judgment of conviction was *reversed*, as we stated in the order at the conclusion of our opinion:

> **JUDGMENT OF THE CIRCUIT COURT QUEEN ANNE'S COUNTY FOR INVOLUNTARY MANSLAUGHTER COUNT REVERSED. JUDGMENTS AFFIRMED IN ALL OTHER RESPECTS. APPELLANT AND QUEEN ANNE'S COUNTY TO SPLIT COSTS.**

*Id.* at 69. Indeed, our holding that the evidence was insufficient to support a finding of gross negligence would have precluded re-trial on that charge had we reversed on other grounds.

*Finally*, our resolution of the involuntary manslaughter conviction left no occasion for us to reach the one sentencing issue that was raised in the appeal, *i.e.*, Mr. Johnson's contention that the sentences for involuntary manslaughter or distribution should merge. *Id.* At the very end of its brief, the State argued that if we were to determine that Mr. Johnson's sentences for involuntary manslaughter and distribution merged, we should remand the case for resentencing under the principles enunciated in *Twigg v. State*, 447 Md. 1 (2016). Neither side raised, in their briefs or at argument, any issues regarding resentencing, or not, in the event a conviction was reversed.

### C. The Motion To Reconsider

On February 18, 2020, the State filed a timely Motion to Reconsider and Remand for Resentencing on Reckless Endangerment and Possession [with Intent to] Distribute Heroin and Fentanyl. *See* Md. Rule 8-605(a). The State's motion did not take issue with any aspect of the analysis or any conclusion in our merits opinion, nor did it seek any relief or revision relating to our decision to reverse Mr. Johnson's conviction for involuntary manslaughter. Instead, citing *Twigg* and Maryland Rules 8-604(d)(1) and (d)(2), the State argued that the interests of justice would be served by remanding the case for resentencing in light of the revised "sentencing package" resulting from the reversal of the involuntary manslaughter conviction, Mot. Recons. at 2–5, and that "the sentencing court should be given an opportunity to 'redefine' the shape and size of [Mr.] Johnson's sentencing package so it continues to reflect the sentencing judge's intent." *Id.* at 6. The State argued that "[t]he fact that [Mr.] Johnson's case involves reversal based on sufficiency grounds rather than a merger issue does not change the analysis []" under *Twigg*, *id.*, but by reversing Mr. Johnson's conviction this Court had unwrapped the sentencing package and that "the sentencing court is *entitled* to an opportunity to reshape the package so that it continues to reflect the court's intent." *Id.* at 7 (emphasis added).

We asked Mr. Johnson to respond to the State's motion. *See* Md. Rule 8-605(a). He countered that the State had failed to raise any of the grounds for reconsideration set forth in Maryland Rule 8-605(b) and that *Twigg* had never been extended to a case in which a count of conviction had been reversed. Resp. at 1. He contended that the merits opinion had not left any issues unaddressed or ruled on any issues the parties hadn't briefed nor did

4

the opinion conflict with any decisions of a superior court. *Id.* at 4. He then distinguished *Twigg* from this case in two respects. *First*, he argued that *Twigg* involved a merger of sentences for convictions left intact and that every case relying on *Twigg* and remanding for resentencing had involved an illegal sentence or sentencing defect, not a reversal. *Id.* at 5–7. *Second*, "even if *Twigg* could be extended as the State contends to a case in which a count of conviction is reversed, that decision would only grant the discretion to remand, not require it," *id.* at 7, and he argued the circumstances of this case advise against us exercising our discretion to remand for resentencing in this case. *Id.* at 7–9.

### D. Our Decision On The Motion

Because the merits opinion was a reported opinion, a motion for reconsideration of that opinion must be submitted to the Court as a whole. The panel, led by the authoring judge, prepares a recommendation for the Court and presents that recommendation at the next monthly Conference. In a typical motion to reconsider a reported opinion, the Court is asked to consider changing some aspect(s) of the opinion itself; because, in deciding to report the case, the Court had decided that the issued opinion was "of substantial interest as precedent," Md. Rule 8-605.1(a), amendments to the original reported opinion might affect whether the opinion still meets that standard or whether the Court remains comfortable with the opinion continuing to serve as binding precedent. The Court normally memorializes its decision on a motion either (a) in a new opinion that reflects the changes the Court decided to make in response to the motion or (b) in an order denying the motion which, even in the absence of any explanation, reveals the Court's decision not to change the opinion.

This motion did not challenge the merits opinion's analysis, conclusions, or language. It asked us to grant a form of relief that had not been addressed in the merits opinion, and the Court could have granted or denied the motion without making any changes. All the same, the panel deliberated and decided (on a 2-1 vote that we will explain further below) to recommend that the Court deny the motion. The Court adopted the panel's recommendation at its March 2020 Conference (held on March 31, 2020). The motion was denied in an order that described only the disposition of the motion, not the underlying reasoning.

The State filed a petition for writ of *certiorari* in the Court of Appeals, and the Court granted that petition on June 5, 2020. The Court held oral argument on November 5, 2020, and, on November 10, 2020, remanded the case to this Court, without affirming or reversing, in order that we might "clarify the basis of [our] decision on April 14, 2020 denying Petitioner's motion for reconsideration."

## II.    DISCUSSION

The circumstances of this motion offer a rare retrospective glimpse into the metaphorical room where this decision happened (or, in this instance, inside the third floor of the Robert C. Murphy Courts of Appeal Building).[2] We described above the process of deciding the State's motion to reconsider, and on the merits, the panel split by a 2-1 vote. Judges Nazarian and Zarnoch voted to deny the motion, for reasons we explain below. Judge Graeff voted to grant the motion because the reversal of the involuntary

---

[2] *Cf.* Lin-Manuel Miranda, *The Room Where It Happens*, Hamilton, Act 2 (2015).

manslaughter conviction reduced Mr. Johnson's conviction from thirty years' incarceration, with all but twelve years suspended, to twenty years' incarceration, with all but five years suspended, and, in her view, the trial court should have the ability to reconsider its sentencing package in light of our holding.

Two considerations animated the panel's discussions and recommendation and the ultimate decision to deny the State's motion to reconsider. *First*, the relief the State sought in its motion—a remand for resentencing after *reversal* of Mr. Johnson's conviction for involuntary manslaughter—had not been sought until after we issued our opinion. This consideration proved dispositive: Judges Nazarian and Zarnoch shared this view, and the 2-1 vote on this ground drove the panel's recommendation to the Court that the motion be denied, and that is the recommendation that the Court adopted.

The *second* consideration was the application of Maryland Rule 8-604(d)(1),[3] and the principles articulated in *Twigg vel non* to the facts and circumstances of this case. Judge Nazarian voted to deny the motion for this reason as well, and specifically on the grounds that (a) the involuntary manslaughter conviction had been reversed, not merged, and a resentencing with the potential to increase the sentence for other convictions could defeat our reversal on that charge; (b) the conviction for reckless endangerment, although unchallenged by Mr. Johnson, likely would not have survived the merits opinion's analysis of gross negligence and resentencing on that charge would be inconsistent with the principles underlying our holding; and (c) the net sentence after the reversal of the

---

[3] Because, unlike *Twigg*, our opinion in this case did not reverse a judgment for error in a sentence or the sentencing proceeding, Rule 8-604(d)(2) provides no basis for a remand.

involuntary manslaughter charge was not so disparate from the trial court's sentencing intentions to warrant a remand in the context of this sentencing package. Judge Zarnoch voted against reaching this issue because it had not been raised in the briefing and argument on the merits.

The preceding two paragraphs provide a superficial answer to the Court of Appeals's question and solve the key mystery with which the Court of Appeals and the parties grappled at oral argument. But a mere statement of reasons leaves out the most important element of the panel majority's decision: our discretion as a Court to make it. No case, statute, or other authority *compelled* the outcome of this motion. Our differences as a panel in deliberating on this decision represent differences only as to *how* we should exercise our discretion in addressing the State's motion, and specifically whether this is an appropriate case to grant the discretionary relief the State seeks. To the extent, then, that the State contends that *Twigg* (or any other authority) requires an appellate court to remand under these (or any) circumstances, we disagree.

*Twigg* itself proves the point. Unlike this case, *Twigg* was solely about sentencing. Mr. Twigg had been convicted of myriad sex offenses. Mr. Twigg didn't challenge any of his convictions on the merits—not only were none reversed, they all remained intact. The only question raised initially in *Twigg* was the extent to which the various sentences merged. He contended that his many convictions all merged for sentencing purposes into his conviction for sexual child abuse and, with one difference, both this Court and the Court of Appeals agreed. *Twigg v. State*, 219 Md. App. 259, 266–80 (2014), *aff'd in part, rev'd in part*, 447 Md. 1, 10–19 (2016). That might not seem strange on its face, but the result

8

was extreme and anomalous in that particular case: the trial court had imposed consecutive sentences totaling forty years of active incarceration, yet only a fifteen-year suspended sentence for sexual child abuse. *Twigg*, 219 Md. App. at 280.

The sentence resulting from the mergers was obviously out of sync with what the trial court had sought to impose, but there was enough uncertainty about our authority to remand for resentencing on the remaining charge that we ordered supplemental briefing on (a) whether any authority permitted or precluded us from doing so and (b) any limitations on the sentence a circuit court could impose on remand. *Id.* at 280–82. And there were no cases squarely holding that we had the authority to do so. But based on our analysis of *Jones v. State*, 414 Md. 686 (2010), "we conclude[d] that the Court of Appeals recognized our *discretionary* authority, in cases where the trial court fails to properly merge the convictions for sentencing purposes, to vacate the sentences on all of the convictions involved in the merger and to remand the case to the trial court for the imposition of a new sentence on the conviction remaining for a sentence after merger has been accomplished." *Twigg*, 219 Md. App. at 284–85 (emphasis added).

The Court of Appeals disagreed with us on the extent to which Mr. Twigg's sentences merged—it vacated the sentence for second-degree rape—but otherwise affirmed. *Twigg*, 447 Md. at 18–19. As we had, the Court of Appeals "recognized, with at least tacit approval, the propriety of resentencing on a greater offense upon merger for sentencing purposes of a lesser included offense." *Id.* at 20 (discussing *Jones*). The Court also noted that Mr. Twigg "offer[ed] no authority for the proposition that remand for resentencing, as was done in *Jones* and as the Court of Appeals did in the present case, is

unauthorized by Maryland statute, our rules, or our case law, and we are not aware of any." *Id.* at 21.

As a matter of holding, then, *Twigg* stands for the proposition that appellate courts have the *discretionary* authority to remand cases for resentencing in response to their decision that the trial court's sentencing package has been disrupted by mergers the trial court didn't anticipate or consider. Neither *Twigg* opinion remotely suggests that resentencing is compulsory or that the State or the trial court is *entitled* to another bite at the sentencing apple. To the contrary, our Court's opinion in *Twigg* highlighted and relied on the extreme result of the merger decisions in that particular case—we qualified the first holding by saying that "*under the circumstances of the instant case*, this Court has the *discretionary* authority to remand the case to the trial court for the purpose of imposing a new sentence on appellant for his sexual child abuse conviction . . . ." *Id.* at 282. And although the Court of Appeals's discussion doesn't repeat the limitation in so many words, it expressly endorsed the remand "as was done in *Jones* and as the Court of Special Appeals did in the present case," *Twigg*, 447 Md. at 21, which comes pretty close.

As a matter of principle, nothing in *Twigg* appears to preclude an appellate court from ordering a *Twigg* remand in a case where the sentencing package was disturbed by a decision to reverse a conviction. But by the same token, *Twigg* can't reasonably be read to compel a remand under these circumstances, especially if a remand is *discretionary* in a merger case such as *Twigg*. The authority to order a remand for resentencing lies in the discretion of the appellate court that reviewed the conviction and decided to reverse it. And in this case, the three members of the panel reached different conclusions about whether

the Court *should* exercise its discretion to order a remand. There is no debate among us about whether we could, only whether this is an appropriate case to exercise that discretion.